IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

IVORY WADE,                                                    OPINION AND
                                                               ORDER
                          Plaintiff,
                                                               07-cv-462-bbc
              v.

DR. MARCELO CASTILLO and
DR. JOSEPH DRINKA,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action for monetary relief, brought under 42 U.S.C. § 1983 and
Wisconsin state law, plaintiff Ivory Wade contends that defendants Marcelo Castillo and
Joseph Drinka committed medical malpractice and exhibited deliberate indifference to his
serious medical needs in violation of the Eighth Amendment.  Specifically, plaintiff argues
that defendant Drinka failed to meet the minimum standard of care for a psychiatrist and
was deliberately indifferent to plaintiff's medical needs when he discontinued plaintiff's
prescriptions for psychiatric medications on January 23, 2007.  Plaintiff argues that
defendant Castillo also committed medical malpractice and violated the Eighth Amendment
by failing to thoroughly evaluate plaintiff's mental health and psychotic symptoms and

1

failing to prescribe anti-psychotic medication.

Both defendants have moved for summary judgment, and these motions are presently before the court.  Jurisdiction is present under 28 U.S.C. §§ 1331 and 1367.

Defendant Drinka argues that plaintiff's Eighth Amendment claim should be dismissed because (1) plaintiff did not have a serious medical need in January 2007; and (2) even if he did, Drinka was not deliberately indifferent to the need.  I find, however, that plaintiff's recent diagnosis of a psychotic disorder and his history of mental health issues are sufficient to raise a material issue about whether he had a serious medical need of which Drinka was aware and knowingly or recklessly ignored.

Defendant Drinka argues that the state medical malpractice claim against him should be dismissed for two reasons.  First, plaintiff failed to comply with Wis. Stat. § 893.82, which requires prisoners to file a notice of claim with the attorney general's office and either wait 120 days or receive a denial before commencing a civil action against a state employee. Alternatively, defendant argues that plaintiff's state claim should be dismissed because he has failed to show a causal connection between Drinka's actions and plaintiff's alleged harm. Because I conclude that plaintiff's medical malpractice claim must be dismissed for his failure to comply with Wis. Stat. § 893.82, I do not address Drinka's arguments on the merits. Therefore, defendant Drinka's motion for summary judgment will be denied with respect to plaintiff's Eighth Amendment claim and granted with respect to plaintiff's state law claim.

2

Defendant Castillo argues that plaintiff's Eighth Amendment claim against him should be dismissed because (1) plaintiff did not have a serious medical need;  and (2) even if he did, Castillo was not deliberately indifferent because he relied on professional medical judgment.  Because the undisputed facts do not support a finding that Castillo failed to use medical judgment, Castillo's motion for summary judgment on plaintiff's Eighth Amendment claim will be granted.

As to plaintiff's medical malpractice claim against defendant Castillo, Castillo contends that it should be dismissed because (1) plaintiff fails to show that Castillo's treatment fell below the standard of care for a psychiatrist in a similar position;  and (2) plaintiff fails to establish any causation between Castillo's refusal to prescribe anti-psychotic medication and plaintiff's alleged injuries.  However, the evidence plaintiff has adduced, including his own testimony, his medical reports and his expert's opinion, creates a material issues for the trier of fact on both the standard of care and causation.  The standard for medical malpractice is significantly lower than that for the Eighth Amendment.  Although a reasonable jury could not infer deliberate indifference, it could find that Castillo was negligent.  Therefore, defendant Castillo's motion for summary judgment on plaintiff's medical malpractice claim will be denied.

From the parties' proposed findings of fact, I find the following to be material and undisputed.

3

UNDISPUTED FACTS

A. <u>Parties and Background</u>

Plaintiff is incarcerated at Green Bay Correctional Institution in Green Bay, Wisconsin.  During the time period relevant to this case, he was in the custody of the Wisconsin Department of Corrections at Dodge Correctional Institution and Racine Correctional Institution.  On November 30, 2006, while plaintiff was housed at Dodge, a Department of Corrections psychiatrist evaluated him and made a diagnosis of psychotic disorder NOS ("Not Otherwise Specified").  At this time, plaintiff had prescriptions for the anti-psychotic medication Seroquel and the anti-depressant Paxil.  In December 2006, another Department of Corrections psychiatrist at Dodge, Dr. Laurence Trueman, evaluated plaintiff, made a provisional diagnosis of psychosis NOS and increased plaintiff's Seroquel prescription.  Dr. Trueman also made a diagnosis of anti-social personality disorder and polysubstance dependence and continued his Paxil prescription.

Seroquel is an antipsychotic medication with the generic name quetiapine.  Paxil is an antidepressent with the generic name paroxetine.  Under Wisconsin Department of Corrections policy, Seroquel should not be used for a patient starting new treatment for a psychotic disorder, though the policy allows patients with existing Seroquel prescriptions to continue taking the medication.  Department of Corrections policy also recognizes the right of competent inmates to stop taking medication and otherwise refuse treatment.

4

When plaintiff was admitted to Racine on January 8, 2007, he was still taking Seroquel and Paxil. He described to the Racine psychiatric staff his history of hearing voices, past experience with depression and numerous hospitalizations. The Racine staff received plaintiff's medical chart on January 11, which confirmed plaintiff's recent treatment for psychosis and depression. Later in January, plaintiff reported to the staff that he was doing well and asked to be taken off his medication and removed from clinical monitoring.

Defendants Joseph Drinka and Marcelo Castillo are psychiatrists who were employed by the Wisconsin Department of Corrections at all times relevant to this case. Defendant Drinka worked as a psychiatrist at Racine Correctional Institution from December 1, 2006, through March 31, 2007. Psychiatric medication management was one of his principal job responsibilities. From 1999 until August 2007, defendant Castillo worked part-time at several Department of Corrections prisons, including Racine, and became a full-time Department of Corrections psychiatrist in August 2007. Defendant Castillo's responsibilities generally include, but are not limited to, assessing and treating patients' mental disorders and diseases and prescribing medications as needed. While employed at Racine, defendants Drinka and Castillo were part of a multi-disciplinary team that consisted of psychologists, social workers, unit managers and security staff.

### B.  Defendant Drinka's Discontinuation of Plaintiff's Medications

As noted, shortly after plaintiff's arrival at Racine Correctional Institution, he decided he no longer wanted to take Seroquel or Paxil. (The parties dispute plaintiff's motivation for discontinuing his medications). On January 22, 2007, plaintiff told a Department of Corrections psychiatrist, Dr. Lawrence Todryk, that he had not taken his medications for three days.  Plaintiff's medications were largely out of his system within 72 hours of their discontinuation.  At Dr. Todryk's suggestion that he submit a health service request to be officially taken off his medications, plaintiff submitted a health service request to defendant Drinka, in which he stated: "I would like my medication discontinued (A.S.A.P.)."  On January 23, 2007, Drinka approved plaintiff's request by writing "Okay!" on plaintiff's health service request form and writing a physician's order to discontinue plaintiff's medications.  Drinka noted the health service request and discontinuation of medication on plaintiff's medical chart.   Drinka did not meet with plaintiff or talk to him before discontinuing his Paxil and Seroquel prescriptions.  Indeed, Drinka's involvement with plaintiff at Racine was limited to approving this single health service request.

It is Drinka's custom before approving or disapproving a health service request, to consult a patient's medical chart history, discuss any reports of noncompliance with nurses or other psychiatric staff, consider possible medication abuse and weigh the possible risks and benefits of continuation versus discontinuation of a patient's medication.  (It is disputed

6

whether Drinka followed this custom before approving plaintiff's health service request.).

C. <u>Defendant Castillo's Initial Interactions with Plaintiff</u>

Although plaintiff was originally scheduled to meet with defendant Castillo on February 2, 2007, plaintiff failed to keep this appointment and rescheduled the appointment for March 28. At the March 28 appointment, plaintiff reported to Castillo that he was doing well and was "maintaining" with respect to sleep, appetite, mood, energy and interest levels. Plaintiff denied any hallucinations or delusions and was not showing any psychotic symptoms. Castillo noted in his psychiatric report that plaintiff's anti-psychotic medication had been discontinued in January and that plaintiff "[a]ppear[ed] to be in remission without medication." Castillo also noted that plaintiff did not appear to be "attending to internal stimuli" or show any obvious abnormalities in orientation, speech, mood, affect, psychomotor activity, thought process, thought content, cognition or memory. When Castillo asked plaintiff about his prior symptoms, plaintiff asked defendant Castillo what his chart contained about his prior statements, and then stated that he "maybe exaggerated" previous psychiatric symptoms. Plaintiff confirmed that he no longer wished to be considered a psychiatric patient or take his past medications. At the conclusion of the March 28 meeting, defendant Castillo did not prescribe any psychiatric medications for plaintiff.

In April 2007, plaintiff learned that his wife had been murdered.  Psychiatric staff met with plaintiff on April 30, May 1, May 2, May 3, May 18, and June 19.  Staff reported that plaintiff appeared shocked and drained shortly after hearing of his wife's murder.  (The parties dispute whether plaintiff suffered from hallucinations after his wife's death in May.)  In May, plaintiff claimed to be doing better, but expressed worry about the welfare of his children.

Defendant Castillo next met with plaintiff on May 25, 2007, and reported that plaintiff had been "enjoying visits from family," claimed to be "fine" and appeared to have a euthymic mood.  Castillo made a report that plaintiff previously had been diagnosed with antisocial personality disorder, polysubstance dependence and psychosis NOS, but was currently "in remission while off meds."  During the visit, Castillo observed no psychotic symptoms and prescribed no medications for plaintiff.

### D.  Events of July and August 2007

On July 1, 2007, plaintiff ran through the prison courtyard naked, yelled that he was on fire and attempted to climb the fence surrounding the tennis courts.  Plaintiff was not on fire.  He was talked down from the fence, restrained and placed in clinical observation for 24 hours.  Initially, plaintiff told the staff he had no memory of these events, stating that he felt sick, had a headache and had trouble eating.

8

Ten days later, on July 11, 2007, plaintiff reported hearing voices and asked to speak to a psychiatrist.  The next day, on July 12, plaintiff cut his wrists in his cell.  He appeared incoherent and was sprayed with an incapacitating agent, extracted from his cell and placed on clinical observation status with a "high risk" of "self-endangerment."

On July 19, 2007, defendant Castillo met with plaintiff in the segregation unit, where plaintiff was on observation status.  Plaintiff had neatly arranged piles of documents in his cell.  After Castillo arrived, plaintiff retrieved copies of the disciplinary report describing the incidents from the past few weeks and screamed for Castillo to read it.  Although the report stated that plaintiff claimed no memory of the July 1 events, plaintiff explained to Castillo that he did have a memory of being on fire in a burning church, and that he had run to escape the burning church.  When Castillo attempted to ask plaintiff additional questions about the event, plaintiff became "verbally agitated."   Plaintiff also showed Castillo two other documents in which Racine officers said he was making seemingly incoherent statements.  Plaintiff claimed he was hearing voices and hallucinating, and he demanded psychiatric medication.  Castillo declined to put plaintiff back on anti-psychotic medication and noted in his report that he was "not sure" whether plaintiff was "truly psychotic."  Castillo also noted that plaintiff "wanted to be perceived as acutely mentally ill."  At some point during his July visits with plaintiff, Castillo offered antidepressants to plaintiff, but plaintiff refused them.  Later, staff reported that plaintiff's "personal crisis" appeared to have

9

subsided and he was removed from observation status.

On July 23, plaintiff again reported hearing voices and was seen by a crisis intervention worker.  On July 26, plaintiff was placed on observation status after he was found crying and stating that "the voices said they were going to kill me."  Defendant Castillo met plaintiff at the segregation unit on July 26 and 27, and plaintiff told Castillo that he had been hearing evil-sounding voices and hallucinating.  Plaintiff again asked Castillo to prescribe Seroquel, and Castillo declined again, indicating in his report that he suspected malingering and found plaintiff's presentation not supportive of an acute psychotic state.  Castillo noted that although it seemed plaintiff's goal was to be perceived of as psychotic, plaintiff was not agitated, his thought process was very well organized and he did not appear to be attending to internal stimuli.  After the visit, Castillo diagnosed antisocial personality disorder and polysubstance abuse.  Castillo noted plaintiff's prior diagnosis of psychosis NOS by history, with a suspicion of malingering.  Castillo did not determine whether plaintiff was psychotic, but decided to monitor plaintiff and scheduled a follow-up appointment for the following week.  Castillo does not usually prescribe anti-psychotic medications unless he is certain that a patient is truly psychotic.  It is his policy to determine whether a patient is malingering before figuring out what motivation the patient may have for falsifying symptoms.

On July 31, plaintiff again reported to prison staff that he had been hearing voices

10

and asked to "talk to somebody." He was seen by a crisis intervention worker that same day.

Defendant Castillo's final meeting with plaintiff was on August 3. Plaintiff was once again in segregation, and when Castillo appeared at the cell door, plaintiff approached the door in a slow, robotic fashion. Plaintiff stopped near the door and stared blankly for about a minute, while holding his right index finger to his right ear. When Castillo finally told plaintiff that he needed to speak, plaintiff moved to the door. Speaking in a "well modulated voice" and with "good spontaneity," plaintiff reported that voices had been laughing at him and occasionally giving him messages of self-harm. He also reported that his moods and attitudes changed quickly, though he stated that he was not depressed and had gotten over any grief related to his wife's murder. Plaintiff told Castillo that he had previously requested his medication be stopped because he thought he was doing well. Plaintiff repeatedly urged Castillo to restore his Seroquel prescription, but Castillo declined, noting that he "didn't see an indication for the anti-psychotic meds that [plaintiff] [was] specifically seeking." Castillo noted that "[w]hether [plaintiff] will act out in aggressive or self harming fashion remains to be seen." Castillo also noted "probable malingering," and diagnosed polysubstance dependence and antisocial personality disorder.

On August 7, 2007, plaintiff made a superficial cut on his wrist. When the prison staff arrived, plaintiff was crying, "Please don't kill me. I don't want to die." Plaintiff reported decreasing appetite and ability to sleep. After plaintiff met with the psychiatric

11

staff, he was transferred to the Wisconsin Resource Center for further psychiatric evaluation on August 8, 2007.

### E.  Plaintiff's Expert Witness

Plaintiff has retained Kenneth Robbins, M.D., as an expert witness.  Robbins believes that neither defendant Drinka's nor defendant Castillo's treatment of plaintiff met the minimum standard of care for a psychiatrist.  In Robbins's opinion, defendant Drinka failed to meet the standard of care by discontinuing plaintiff's Seroquel prescription without a clinical contact and without thoroughly determining plaintiff's diagnosis, the reason for his original Seroquel prescription or why plaintiff wanted his medication stopped.  Similarly, Robbins believes that defendant Castillo did not meet the standard of care by denying plaintiff a Seroquel prescription because of his unfounded suspicions that plaintiff was malingering.

Robbins has also offered his opinion on whether plaintiff's harm can be attributed to defendants' actions or inactions.  Robbins stated that "it is reasonable to assume Dr. Drinka's actions ultimately led to the difficulties Mr. Wade experienced in July and August of 2007."  As to defendant Castillo, Robbins stated that "Dr. Castillo's decision to withhold Seroquel from Mr. Wade put him at substantial risk of harm and left him to suffer until the medication was finally restarted at the Wisconsin Resource Center."

12

OPINION

I. EIGHTH AMENDMENT DELIBERATE INDIFFERENCE

_____The Eighth Amendment prohibits cruel and unusual punishment, and requires the government "to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976).  A Department of Corrections doctor may violate a prisoner's right to medical care if the official is "deliberately indifferent" to a "serious medical need."  Id. at 104-5.  A claim of deliberate indifference contains an objective and subjective component.  Greeno v. Daley, 414 F.3d 645, 652 (7th Cir. 2005). Plaintiff must establish facts from which it can be inferred that he had an objectively, sufficiently serious medical need, and that the defendant was subjectively aware of plaintiff's serious medical need and chose to disregard it.   Farmer v. Brennan, 511 U.S. 825, 838 (1994).

A.  Defendant Drinka

1.  Serious medical need

A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006); Greeno, 414 F.3d at 653.  The

13

condition does not have to be life threatening.  Guttierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997).  A medical need may be serious if it "significantly affects an individual's daily activities," id. at 1373, if withholding treatment of the condition results in needless pain and suffering, id. at 1369, or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer, 511 U.S. 825 (1994).  A psychiatric or psychological disorder may present a "serious medical need."  Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996);  Meriwether v. Faulkner, 821 F.2d 408 (7th Cir. 1987).

It is undisputed that in November and December 2006, plaintiff was prescribed Seroquel to treat a psychotic disorder that had been diagnosed by two Department of Corrections psychiatrists.  The Court of Appeals for the Seventh Circuit has held that "the very fact that prison medical staff prescribed [plaintiff medication] is evidence permitting the inference that the drug was medically necessary."  Gil v. Reed, 535 F.3d 551, 556 (7th Cir. 2001).  Furthermore, plaintiff's medical history included reports of hearing voices, suffering depression and being hospitalized numerous times.  Defendant Drinka admits that plaintiff has a history of diagnosed psychotic symptoms that are consistent with a psychotic disorder. Although Drinka contends that plaintiff no longer wanted or needed anti-psychotic medication in January 2007, this shows only that a genuine dispute exists.  Taking the evidence in light most favorable to the plaintiff, a reasonable jury could conclude that plaintiff had a serious medical need in January 2007.

14

2.  Deliberate indifference

Plaintiff contends that defendant Drinka acted with a "sufficiently culpable state of mind" to satisfy the subjective component of plaintiff's Eighth Amendment claim when he allegedly approved plaintiff's health service request for medication discontinuation without adequate consultation with plaintiff's previous doctors, medical history or plaintiff himself, and that this discontinuation led to serious harm. Farmer, 511 U.S. at 834.  A prison doctor is deliberately indifferent if he knows of an excessive risk to inmate health and safety and nonetheless either knowingly or recklessly disregards it.  Id. at 837; Hayes v. Snyder, 546 F.3d 516, 524 (7th Cir. 2008).  Although negligence and even gross medical negligence do not rise to the level of cruel and unusual punishment within the meaning of the Eighth Amendment, deliberate indifference is something less than intentional harm.  Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996).

To prevail on this claim, plaintiff must show that first, defendant Drinka was aware of plaintiff's serious medical need for medication and consultation.  Although Drinka denies awareness or belief that plaintiff had a serious medical need, subjective awareness can be proved through circumstantial evidence.  Hayes, 546 F.3d at 524.  Plaintiff has adduced enough circumstantial evidence to allow a reasonable jury to infer that defendant Drinka was subjectively aware of plaintiff's serious medical need and knew that antipsychotic medication

15

was medically necessary to treat his condition.  Drinka knew that plaintiff had a recent diagnosis of a psychotic disorder and had been prescribed Seroquel by previous Department of Corrections psychiatrists.  Even a lay person could infer that a person with a diagnosis of a psychotic disorder and a history of mental illness may need medication and, at the very least, should be seen by a psychiatrist before he discontinued a medical regimen.  It is particularly striking that psychiatric medication management was one of defendant Drinka's principal job responsibilities at Racine Correctional Institution.  He has testified that it would not be proper to discontinue a prescription for Seroquel simply because an inmate asked him to do so.  Thus, a trier of fact could reasonably infer that as a psychiatrist, Drinka knew that discontinuing a Seroquel prescription for a patient such as plaintiff posed a serious risk of harm.

The second subjective element of deliberate indifference is that Drinka knowingly or recklessly disregarded the substantial risk to plaintiff.  If a jury could infer that defendant Drinka knew that plaintiff could face serious risk of harm by discontinuing his medication without full knowledge of possible side effects and implications for plaintiff's mental health, then Drinka was under a constitutionally imposed obligation to take "reasonable measures" to abate the risk.  Farmer, 511 U.S. at 847; Mombourquette v. Amundson, 469 F. Supp. 2d 624, 638 (W.D. Wis. 2007).  Exercising medical judgment usually qualifies as taking "reasonable measures."  However, if a medical provider's actions are not based on medical

16

judgment, a jury may infer unreasonableness and deliberate indifference.  Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996).  In other words, if plaintiff adduces evidence that defendant Drinka's action when approving plaintiff's health service request was so blatantly inappropriate as to imply that it was not actually based on medical judgment, a reasonable jury could infer deliberate indifference.  Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008).

Plaintiff filed a health service request seeking discontinuation of his prescriptions on January 22, 2007.  Drinka approved the request on January 23.  The undisputed facts show that Drinka did not meet plaintiff, examine him or determine why he wanted to be removed from his medications.  Defendant Drinka did not inform plaintiff of the clinical risks associated with his request to discontinue his psychotropic and antidepressent medications, discuss any alternatives or give plaintiff information about warning signs that would alert him to a potential return of psychotic symptoms.  He did not prepare a written report or otherwise document the medical basis for his decision to discontinue plaintiff's Seroquel and Paxil prescriptions.

Defendant Drinka argues vigorously that he exercised sound medical judgment when approving plaintiff's health request form.  In his affidavit, Drinka asserts that he would not discontinue a patient's medications just because a patient asked him to.  Rather, his custom in assessing health service requests is to consider the patient's request, gather available

17

information including the patient's medical charts and psychiatric history and weigh the risks and benefits in the correctional setting of continuation versus discontinuation of medication.  In this case, Drinka opines that it is "more than likely" that he read plaintiff's chart and discussed plaintiff's case and his noncompliance behavior with nurses and other psychiatric staff before approving the health service request.  In his deposition, however, Drinka admitted that he could not remember plaintiff's specific health service request and he stated that the only indication of his thought process in approving or disapproving a health service request is what he records on the health service request form.  The only documentation of his thought process is one word on the form:  "Okay!"

Plaintiff has suggested that the difference between Drinka's testimony and his affidavit justify applicability of the "sham affidavit" rule.  Under this rule, a deponent may not use an affidavit sworn to after a deposition to contradict deposition testimony, without giving a credible explanation for the discrepancies.  I do not think it is necessary to exclude Drinka's affidavit under the sham affidavit rule.  Bank of Illinois v. Allied Signal Safety Restraint, 75 F.3d 1162, 1170 (7th Cir. 1996) (post-deposition testimony should be excluded only if it is inherently inconsistent and squarely contradicts previous testimony).  However, the lack of documentation supporting Drinka's position, combined with the discrepancy between Drinka's deposition testimony and affidavit, create a genuine dispute about whether Drinka used medical judgment when discontinuing plaintiff's medications.

18

Mombourquette, 496 F. Supp. 2d at 640 (denying summary judgment where "there is a genuine dispute whether defendant [] was actually using medical judgment," particularly where defendant "did not prepare a written report or otherwise document the medical basis for her decision").

I conclude that a reasonable jury could conclude that defendant Drinka was aware that he was exposing plaintiff to a substantial risk of serious harm by taking plaintiff off his medications.  Accordingly, defendant Drinka's motion for summary judgment on plaintiff's Eighth Amendment claim will be denied.


B.  Defendant Castillo

I will assume for the purpose of deciding this motion that plaintiff had a serious medical need during his interactions with defendant Castillo.  I conclude, however, that plaintiff has not adduced enough evidence for a reasonable trier of fact to conclude that Castillo was deliberately indifferent to his serious medical need.

Before defendant Castillo will be found deliberately indifferent, the plaintiff must show that he acted with such blatant inappropriateness so as to imply that his actions or omissions were not actually based on medical judgment.  Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008). As a practical matter, this means that if a medical professional exercises some medical judgment, regardless whether his ultimate diagnosis and chosen

19

treatment are erroneous, he cannot be found to be deliberately indifferent.  Id. at 680-81.

Plaintiff argues that defendant Castillo's repeated refusal to prescribe antipsychotic medication combined with his refusal to investigate the bases for his suspicions that plaintiff was malingering was not based on any medical judgment and therefore amounts to deliberate indifference to plaintiff's serious medical needs.  However, the facts show that Castillo did not prescribe Seroquel because he was uncertain whether plaintiff had a psychotic disorder. Although plaintiff argues that Castillo's suspicions of malingering were "unsubstantiated," Castillo offers several explanations for them.  Particularly significant is the undisputed fact that plaintiff told Castillo in March 2007 that he might have "exaggerated" previously documented psychotic symptoms.  Thus, Castillo had to determine whether plaintiff was currently "exaggerating" or falsifying symptoms.  Castillo's observations that plaintiff was not agitated, his thought process was well organized, he did not seem to be attending to internal stimuli, he did not have difficulty communicating and he was goal-directed and focused led Castillo to conclude that plaintiff's presentation did not support a finding of a psychotic disorder.    Instead,  he  diagnosed  antisocial  personality  disorder  and  polysubstance dependence and offered plaintiff antidepressants.  Because Castillo did not usually prescribe psychotropic medication without certainty of psychosis, he decided to continue to observe plaintiff instead of prescribing Seroquel.  In the face of these facts, a reasonable jury could not find that defendant Castillo failed to use medical judgment in deciding not to prescribe

20

Seroquel to plaintiff.

Although I conclude below that a reasonable jury could find that defendant Castillo did not act in accordance with the standard of care in the context of a medical malpractice claim, the standard for deliberate indifference is substantially higher than for negligence in a medical malpractice claim. <u>Vance v. Peters</u>, 97 F.3d 987, 992 (7th Cir. 1996). Disagreement with a doctor's medical judgment, incorrect diagnosis or improper treatment resulting from negligence is insufficient to state an Eighth Amendment claim. <u>Gutierrez</u>, 111 F.3d 1364, 1374 (7th Cir. 1997). Because the record does not support the conclusion that defendant Castillo failed to use any medical judgment at all or that his judgment was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." <u>Estate of Cole by Pardue v. Fromm</u>, 94 F.3d 254, 261-62 (7th Cir. 1996), defendant Castillo's motion for summary judgment on plaintiff's Eighth Amendment claim will be granted.

## II. STATE MEDICAL MALPRACTICE CLAIMS

### A. <u>Defendant Drinka</u>

Plaintiff's medical malpractice claim against defendant Drinka arises under Wisconsin law. Defendant argues that he is entitled to summary judgment with respect to this claim

21

because plaintiff did not comply with Wis. Stat. § 893.82, which requires a plaintiff pursuing a medical malpractice claim against a state employee to serve written notice on the attorney general within "180 days after discovery of the injury or the date on which, in the exercise of reasonable diligence, the injury should have been discovered." Wis. Stat. § 893.82(3) and (5m). The notice of claim must be sworn to by the claimant, served on the attorney general by certified mail at his office in the capitol and must state the "time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employee or agent involved." Id.

Subsection 3(m) also applies, requiring claimants who are prisoners to file a notice of claim and either wait for the attorney general to deny the claim or wait 120 days after the notice was filed before beginning a civil action against a state employee. Wis. Stat. § 893.82(3m).

The facts reveal that plaintiff did not serve the required notice of claim on the attorney general before commencing an action against defendant Drinka. Plaintiff filed his complaint against defendant Castillo in this court on August 20, 2007. On August 27, 2008, plaintiff sought leave to file his proposed amended complaint naming Drinka as a defendant. After this court granted leave to amend, plaintiff filed a second amended complaint on September 15, 2008, adding medical malpractice and Eighth Amendment claims against

22

Drinka.  It was not until October 2, 2008, that plaintiff served a notice of claim on the Wisconsin Attorney General's office, alleging that Defendant Drinka's lack of appropriate psychiatric care constituted medical malpractice and deliberate indifference.

Plaintiff argues that the August 27 motion for leave to amend could be characterized as a notice of claim and Castillo's opposition to the motion as an effective denial of claim. The argument is innovative but unpersuasive.  The requirements of Wis. Stat. § 893.82 must be strictly followed;  substantial compliance is not enough.  Riccitelli v. Broekhuizen, 227 Wis. 2d 100, 116 595 N.W.2d 392, 399 (1999); see also Kellner v. Christian, 197 Wis. 2d 183, 195, 539 N.W.2d 658, 690 (1995).  Plaintiff's motion seeking leave to amend his complaint served notice on this court and defendant Castillo.  Defendant Castillo opposed the motion, not the attorney general.  Although Castillo is represented by lawyers from the Wisconsin Department of Justice, their actions in their roles as counsel may not be imputed to the attorney general for the purpose of determining whether proper notice was given.  In any event, opposing a motion for leave to amend on procedural grounds does not constitute a denial of the underlying claim.

Because plaintiff failed to comply with Wis. Stat. § 893.82, defendant Drinka's motion for summary judgment will be granted with respect to plaintiff's state medical malpractice claim against him.

23

B. <u>Defendant Castillo</u>

Wisconsin law defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." <u>Sawyer v. Midelfort</u>, 227 Wis. 2d 124, 149, 595 N.W.2d 423, 435 (1999); <u>Shuster v. Altenberg</u>, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161-62 (1988).   Plaintiff contends that defendant Castillo deviated from the standard of care for psychiatrists by refusing to prescribe psychiatric medication and failing to provide appropriate psychiatric care.

Like all claims for negligence, a claim for medical malpractice includes the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. <u>Paul v. Skemp</u>, 2001 WI 42 ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 .  Thus, to establish a prima facie medical negligence claim, plaintiff must show that defendant Castillo failed to use the required degree of skill exercised by an average psychiatrist, plaintiff was harmed and there is a causal connection between Castillo's failure and plaintiff's harm.  Wis J-I Civil 1023.

1. <u>Standard of care</u>

Unless the situation is one in which common knowledge affords a basis for finding negligence, medical malpractice cases require expert testimony to establish the standard of

24

care.  Carney-Hayes v. Nw. Wisconsin Home Care, Inc., 2005 WI 118 ¶ 35, 284 Wis. 2d 56, 699 N.W.2d 524.  The requirement that expert testimony be offered to establish the degree of care and skill required by an average practitioner extends to claims against psychiatrists and psychologists.  Schuster, 144 Wis. 2d at 238, 424 N.W.2d at 165 (holding that "a psychotherapist would not be found negligent for failing to predict dangerousness or for failing to take action to protect the patient from himself or herself, unless it is established by expert testimony that by so acting the doctor failed to conform to the accepted standard of care").  Plaintiff's situation is not one in which the common knowledge of laypersons affords a basis for finding negligence; in general, laypersons do not know how to identify and treat psychotic symptoms of prisoners.  Therefore, plaintiff has named Dr. Robbins as an expert witness to assist the jury in determining whether defendant Castillo's treatment of plaintiff was negligent.

Defendant Castillo contends that Robbins never clearly specifies the standard of care for a psychiatrist in Castillo's situation.  I disagree.  Robbins explains that given the relevant circumstances, "reasonable clinical care" would require Castillo to examine all circumstances affecting plaintiff's mental health before deciding on a particular diagnosis or form of treatment.  Robbins has stated that Castillo failed to meet this minimum standard on several occasions:  on March 28, 2007 he did not adequately question plaintiff's decision to cease medication and treatment;  on May 25, 2007, he did not ask about the effect that the death

25

of plaintiff's wife may have had on plaintiff's mental health; and on July 19, 26, and 27, he did not discuss or investigate any potential reason for the change in plaintiff's mental health or plaintiff's attitude toward mental health treatment and classification. Robbins questions defendant Castillo's failure to prescribe Seroquel when he did not have a compelling explanation for his belief that plaintiff had suddenly begun to fabricate symptoms. Robbins explains that defendant Castillo failed to meet the standard of care. In this particular case, he says, defendant Castillo should have operated under a working presumption that plaintiff's symptoms were real and needed treatment, in light of plaintiff's previous history of psychosis, the apparent effectiveness of Seroquel in treating his symptoms, plaintiff's prior history of wishing to be free from medication, plaintiff's claims of mental distress and hallucinations, plaintiff's actions of self-harm, and the absence of explanation for fabricating symptoms. At the least, such a presumption requires a rigorous investigation of any suspicions that symptoms are not genuine. Defendant Castillo does not assert that he undertook a rigorous investigation into plaintiff's possible malingering. Instead, he decided to withhold psychotropic medications.

Taking into consideration plaintiff's evidence, including Dr. Robbins's opinions, and viewing the evidence in a light most favorable to plaintiff, a reasonable jury could conclude that Castillo did not meet the standard of care when he failed to undertake a rigorous investigation of plaintiff's symptoms or treat plaintiff's symptoms properly. Accordingly, I

26

find that plaintiff has raised a genuine issue of material fact as to whether defendant Castillo

met the requisite standard of care.

2.  Causation and harm

        Plaintiff must ultimately show that Castillo's negligence was a "substantial factor" in

producing plaintiff's harm.  Fischer v. Ganju, 168 Wis. 2d 834, 857, 485 N.W.2d 10, 19

(1992).  A defendant's conduct is not a substantial factor unless it had "such an effect in

producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause,

using that word in the popular sense.'"  Id. (quoting Clark v. Leisure Vehicles, Inc., 96 Wis.

2d 607, 617-18, 292 N.W.2d 630 (1980)).  At the summary judgment stage in a case in

which a defendant's alleged conduct involves omitted treatment or misdiagnosis, "the

plaintiff need only produce evidence that the omitted treatment was intended to prevent the

type of harm which resulted, that the plaintiff would have submitted to the treatment, and

that it is more probable than not that the omitted treatment could have lessened or avoided

the harm."  Fischer, 168 Wis. 2d at 858, 485 N.W.2d at 19.  If the plaintiff produces

sufficient evidence to meet these three requirements, a prima facie issue of causation exists

and the question must then be submitted to the trier of fact to determine whether plaintiff

has successfully met his burden of persuasion in proving that defendant's negligence was a

substantial factor in producing the injury.  Id.; see also Ehlinger by Ehlinger v. Sipes, 155

27

Wis. 2d 1, 14, 454 N.W.2d 754, 759 (1990).

Viewing all the evidence in a light most favorable to plaintiff, I conclude that plaintiff has adduced enough evidence to submit the issue of causation to a jury. Plaintiff alleges that he suffered "physical harm and grave mental distress." Specifically, he alleges that because defendant Castillo was operating under the presumption that plaintiff was malingering, he refused to provide any relevant medication or offer any treatment that would relieve plaintiff's suffering. In Robbins's opinion, Castillo's decision to withhold treatment was a substantial factor in causing plaintiff to experience hallucinations, hear voices and eventually cut his wrist. Defendant Castillo contends that plaintiff must show that a prescription of Seroquel would have prevented plaintiff's hallucinations or suffering. As I understand Wisconsin law, as explained in <u>Fischer</u>, plaintiff must show instead that Seroquel was intended to prevent the harm suffered (hallucinations, psychotic symptoms, and self-harm), that plaintiff would have submitted to taking Seroquel and that it is more probable than not that Seroquel would have lessened his mental and emotional distress.

Seroquel is a psychotropic drug intended to prevent psychotic symptoms similar to those plaintiff alleges he suffered. Plaintiff has alleged he would have accepted Seroquel, and the evidence would support a conclusion that it is more probable than not that Seroquel would have benefitted him, both because it had worked in the past and because plaintiff's expert has stated that Seroquel would have lessened plaintiff's symptoms. This evidence

28

would be sufficient to permit a reasonable jury to conclude that Castillo's negligence was a substantial factor in causing plaintiff's harm. Accordingly, Castillo's motion for summary judgment on plaintiff's medical malpractice claim must be denied.

ORDER

IT IS ORDERED that:

1. Defendant Joseph Drinka's motion for summary judgment is GRANTED on plaintiff Ivory Wade's medical malpractice claim and DENIED as to his motion for summary judgment on plaintiff's Eighth Amendment claim.

2. Defendant Marcelo Castillo's motion for summary judgment is DENIED on plaintiff Ivory Wade's medical malpractice claim and GRANTED on his motion for summary judgment on plaintiff's Eighth Amendment claim.

Entered this 15th day of September, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

29